J-S22001-26          2026 PA Super 147

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :              PENNSYLVANIA
                                            :
             v.                        :
                                            :
                                          :
RONNIE MCDANIELS                 :
                                          :
           Appellant           :  No. 985 EDA 2025

Appeal from the Judgment of Sentence Entered October 25, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002374-2023

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

OPINION BY PANELLA, P.J.E.:                       **FILED JULY 8, 2026**

Ronnie McDaniels appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas on October 25, 2024. On appeal, McDaniels asserts the trial court erred in denying his pretrial motion to pierce the Rape Shield Law, 18 Pa.C.S.A. § 3104, and purports to challenge the weight of the evidence presented at trial. After careful review, we affirm.

The trial court summarized the factual history of this matter as gleaned from the evidence at trial, in the light most favorable to the Commonwealth as verdict winner:

> At trial, the Commonwealth presented the testimony of the victim ("S.W."), the victim's friend ("A.N."), the victim's mother, Lisa Rotchford of the Philadelphia Department of Human Services ("DHS"), Katherine Van Dolsen of the Philadelphia Children's Alliance ("PCA"), and Philadelphia Police Detective Vincent Strain. [McDaniels] presented the testimony of [McDaniels]'s daughter, and [McDaniels] testified in his own defense. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

S.W.'s mother began dating [McDaniels] around 2016, when S.W. was 10 years old. In 2018, S.W. began feeling uncomfortable around [McDaniels]. On one occasion, while S.W. was walking up the stairs in her home, [McDaniels] approached her from behind and slapped her buttocks. [McDaniels] also began making comments about S.W.'s appearance. In early 2020, when S.W. was 14 years old, [McDaniels] moved into the Philadelphia home where S.W.'s mother lived together with S.W. and S.W.'s three siblings. Until that year, S.W. had generally viewed [McDaniels] as a father figure. However, the nature of their relationship changed after [McDaniels] moved into the home in 2020. [McDaniels] told S.W. she could curse around him. [McDaniels] also began smoking marijuana together with S.W.

On one occasion, when S.W. was 14 years old, S.W. saw [McDaniels] bagging up marijuana to sell and asked if she could help [McDaniels]. [McDaniels] responded that S.W. could help only if she agreed to get naked so [McDaniels] could make sure S.W. did not steal any of the marijuana. S.W. initially refused, but after [McDaniels] offered to give S.W. twenty dollars and two "dime bags" of marijuana to remove her clothes, S.W. agreed and removed her clothes. After that, while S.W. was still 14 years old and in her first year of high school, [McDaniels] began paying money and marijuana to S.W. for a variety of sexual acts. On three different occasions, [McDaniels] paid S.W. to touch [McDaniels]'s penis. Soon after, [McDaniels] began paying S.W. to put [McDaniels]'s penis in her mouth. [McDaniels] once paid S.W. to stand in the shower with him while [McDaniels] masturbated. On other occasions, [McDaniels] paid S.W. to let him lick her vagina. [McDaniels] also paid S.W. to let [McDaniels] put his penis in her vagina three different times. During the third and last time, S.W. screamed in pain when [McDaniels] pushed his penis inside S.W.'s vagina.

The following year, when S.W. was a sophomore in high school, [McDaniels] continued to pay S.W. to rub his penis with her hand and for other sexual acts. However, by the summer of 2022, after S.W.'s sophomore year, S.W. stopped spending time together with [McDaniels] and the abuse ended. That summer, S.W. disclosed [McDaniels]'s abuse to her best friend, A.N., on two different occasions. At the end of the summer, S.W. also told her mother about [McDaniels]'s sexual abuse. S.W.'s mother

confronted [McDaniels] later that night and told him to move out of their home.

The following day, S.W.'s mother took S.W. to Saint Christopher's Hospital. As S.W. was being examined, S.W.'s mother spoke about S.W.'s disclosure to a DHS worker and officers from the Philadelphia Police Department. Lisa Rotchford from DHS then interviewed S.W. S.W. disclosed to Ms. Rotchford specific instances of [McDaniels] sexually abusing her. That same day, S.W. was examined again at the Special Victims Unit of the Philadelphia Police Department. Later in September, S.W. participated in a forensic interview with Katherine Van Dolsen from the Philadelphia Children's Alliance. During the recorded interview, S.W. again described the sexual abuse perpetrated by [McDaniels].

Trial Court Opinion, 6/6/25, at 2-4 (citations omitted).

On May 24, 2024, following trial, the jury found McDaniels guilty of rape by forcible compulsion, involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, unlawful contact with a minor, aggravated indecent assault of a person under the age of 16, endangering the welfare of a child, corruption of minors, and indecent exposure.[1]

On October 25, 2024, the trial court sentenced McDaniels to an aggregate term of 9 to 18 years' incarceration, followed by 6 years' probation. McDaniels filed post-sentence motions, which the court denied. This timely appeal followed.

_____

[1] 18 Pa.C.S.A. § 3121(a)(1), 18 Pa.C.S.A. § 3123(a)(1), 18 Pa.C.S.A. § 6318(a)(1), 18 Pa.C.S.A. § 3125(a)(8), 18 Pa.C.S.A. § 4304(a)(1), 18 Pa.C.S.A. § 6301(a)(1)(ii), and 18 Pa.C.S.A. § 3127(a), respectively.

McDaniels raises the following issues on appeal:

1. Whether the trial court erred in denying [McDaniels]'s pre-trial motion to pierce the Rape Shield Law, 18 Pa.C.S.[A.] § 3104 and ask questions regarding the complainant's past report of a sexual assault to her mother committed by a person named Jay?

2. Whether the evidence is so unreliable and/or contradictory as to make [all of] the verdicts … based thereon pure conjecture?

Appellant's Brief, at 1 (unnecessary capitalization and suggested answers omitted).

First, McDaniels claims the court erred in denying his motion to pierce the Rape Shield Law. Pennsylvania's Rape Shield Law limits the admissibility of an alleged victim's prior sexual conduct:

Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, [and] allegations of past sexual victimization … shall not be admissible in prosecutions of any offense listed in subsection (c)[, which includes, relevantly, Chapter 31 (pertaining to sexual offenses) and Section 6301 (corruption of minors),] except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a).

The Rape Shield Law is intended to "prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. Moreover, the Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Commonwealth v. Jerdon*, 229 A.3d 278, 285 (Pa. Super. 2019) (citations, quotation marks and brackets omitted). When applying the Rape Shield Law,

"past sexual conduct" has been interpreted to include a complainant's sexual history at any time prior to trial. **See Commonwealth v. Jones**, 826 A.2d 900, 908 (Pa. Super. 2003) (*en banc*).

However, evidence of a complainant's sexual conduct with a third party may be admissible in certain limited circumstances. **See Commonwealth v. Largaespada**, 184 A.3d 1002, 1007 (Pa. Super. 2018) (recognizing exceptions to the Rape Shield Law for "evidence that negates directly the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility." (citation omitted)). Such evidence must be probative of whether the defendant committed the alleged conduct. **See id.** at 908-09. When a defendant seeks to introduce evidence that may be barred by the Rape Shield Law, a court must conduct an *in camera* hearing and balance several factors. **See Jerdon**, 229 A.3d at 286-86. "[E]vidence of a claimant's sexual history may be admissible if the evidence is relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature." **Id.** at 286 (citation omitted).

On May 20, 2024, one day prior to the start of trial, McDaniels filed a motion to pierce the Rape Shield Law, arguing that S.W. told investigators that she was previously sexually assaulted by a person named "Jay", and that information regarding that incident was relevant to determine S.W.'s credibility and to expose any potential bias or motives to lie that she had in making the accusation against McDaniels.

On May 22, 2024, after jury selection, but prior to the start of trial, the court held an *in camera* hearing on the motion. The trial court summarized the testimony from the hearing and its findings regarding the motion, as follows:

> During a pre-trial hearing on [McDaniels]'s motion to pierce the rape shield, S.W. testified that when she was 9 or 10 years old and in the fourth grade, a man who appeared to be between the ages of 18 and 21 kissed her on a park bench. S.W. further testified that she and the man, whom she knew as Jay, "touched each other inappropriately." S.W. had not seen Jay before or after the day of the incident in the park. S.W. disclosed the incident involving Jay during her PCA interview in September of 2022, and S.W. also disclosed the incident involving Jay to her mother at some point before S.W. disclosed the sexual abuse perpetrated by [McDaniels].
>
> After reviewing the proposed evidence, the [c]ourt concluded that S.W.'s allegations of past sexual assault by Jay in no way exculpated [McDaniels] for his alleged crimes and that the proposed evidence failed to provide a basis to infer that S.W. had bias or motive to fabricate allegations against [McDaniels] in this case. The [c]ourt further concluded that the prejudicial effect of the proposed evidence would far outweigh its probative value. Based on these conclusions, the [c]ourt properly denied [McDaniels]'s motion.

Trial Court Opinion, 6/6/25, at 13-14 (citations and footnote omitted). We perceive no abuse of discretion in this conclusion.

On appeal, McDaniels argues that permitting him to cross-examine S.W. regarding the prior sexual assault would be relevant because it would have led to exculpatory evidence. Specifically, McDaniels asserts it is not the assault itself that is important, but rather the communications with S.W.'s mother following her reporting of the incident to her mother, that are important and

relevant. McDaniels argues that "common sense indicates that a mother would discuss with her daughter what is appropriate and inappropriate touching between an older person and a young female." Appellant's Brief, at 10. McDaniels asserts that S.W. testified repeatedly that she did not report the alleged abuse because she thought McDaniels' actions were part of the normal father-daughter relationship, so he sought admission of the above evidence to challenge S.W.'s credibility as to what was appropriate conduct between an adult and a child. *See id.* at 11.

Notably, this is not the same argument McDaniels raised in his motion or at the *in-camera* hearing. Rather, McDaniels argued at the hearing that the information about S.W.'s sexual assault by Jay should be admitted for the limited purpose of cross-examining S.W.'s mother as to whether or not S.W. actually reported the incident to her at some point. *See* N.T., 5/22/24, at 22. McDaniels argued it went towards the ultimate issue of S.W.'s credibility because S.W. testified during the hearing that she had reported the incident with Jay to her mother, but discovery had indicated that the incident was not disclosed to anyone other than the PCA interviewer. *See id.* As the claim raised on appeal is different from the claim raised with the trial court, we find the instant claim is waived.

Even if this claim were preserved, McDaniels has misconstrued S.W.'s testimony. The record shows that S.W. testified that while she originally considered her and McDaniels to have a father-daughter relationship, that the

relationship eventually transitioned, and she stopped viewing him as a father-figure, and instead as "just a guy." *See* N.T., 5/22/24, at 77-81. S.W. testified that the relationship transitioned when McDaniels started making comments about her appearance, let her curse around him, began smoking marijuana with her, and eventually when the sexual abuse began. *See* N.T., 5/22/24, at 77-81. S.W. never testified that she believed McDaniels' actions were normal father-daughter interactions.

Further, there is no nexus between the actions of Jay, a random third-party whom S.W. has no familial, or even friendly, relationship with, who inappropriately touched her once, and the actions of McDaniels, her older stepfather who repeatedly sexually assaulted her, including penetrative sex. It is simply unclear how such information would exculpate McDaniels' actions here. In any event, McDaniels' assertions regarding a conversation between S.W. and her mother are entirely speculative and not supported by any evidence.

As we find the trial court did not abuse its discretion and the instant claim is both waived and otherwise based on a misinterpretation of the record, we find McDaniels is due no relief on this claim.

In the next argument section of his appellate brief, McDaniels purports to challenge the weight of the evidence. *See* Appellant's Brief, at 12 (Argument Section C titled "Defendant Challenges the Weight of the Evidence"). However, the majority of this argument section is confusingly

spent asserting bald claims of ineffective assistance of trial counsel, regarding counsel's failure to file a notice of alibi and subpoena McDaniels' employment records. *See id.* at 12-14.

Notably, McDaniels did not raise any ineffectiveness claim in his 1925(b) concise statement. *See* Pa.R.A.P.1925(b)(4)(vii) ("Issues not included in the Statement … are waived."). In any event, claims of ineffectiveness of counsel are generally not ripe until collateral review. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013).[2]

McDaniels' entire argument that is actually related to a weight claim, is only one sentence, and again relies on purported testimony by S.W. "that the interactions between her and [McDaniels] were in the normal confines of a father daughter relationship," calling such testimony "nothing more than 'tenuous, vague and uncertain.'" Appellant's Brief, at 12. As stated above, McDaniels has completely misconstrued S.W.'s testimony.

As McDaniels again relies on a misinterpretation of the record, and otherwise completely failed to develop a weight of the evidence argument, we find his final issue waived. *See Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023) ("Where an appellate brief fails to provide any discussion of a

---

[2] While an exception can be made in extraordinary cases where the trial court determines that a claim of ineffectiveness is "both meritorious and apparent from the record," *Holmes*, 79 A.3d at 577, such is not the case here. Again, McDaniels did not raise this issue before the trial court. Further, McDaniels does not provide any actual ineffectiveness analysis in his appellate brief, and accordingly his claims are nothing more than unsupported bald assertions.

claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

As McDaniels claims on appeal are either waived, or without merit, we affirm the judgment of sentence.[3]

Judgment of sentence affirmed.

_____

[3] While McDaniels' brief contains an argument section, it is not divided "into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). McDaniels only raises 2 issues in his statement of questions involved section of his brief, but includes a 3rd, albeit brief, substantive argument section, regarding jurors discussing McDaniels' guilt outside the courtroom.

McDaniels does not provide any context for this claim, does not cite to the place in the record where he preserved the challenge, and does not cite to any relevant authority. **See** Pa.R.A.P. 2119(a) and (c). Simply put, McDaniels fails to meaningfully develop this 3rd claim. Accordingly, it is waived. **See Commonwealth v. Rahman**, 75 A.3d 497, 504 (Pa. Super. 2013) (citation omitted) (stating that if an appellate brief does not discuss a claim with "citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (citation omitted).

Moreover, McDaniels did not raise this issue before the trial court until 4 months after trial, in a motion for extraordinary relief. After that motion was denied, he raised it again in his post-sentence motions. Out of an abundance of caution, the court held an evidentiary hearing, and while it credited the testimony of McDaniels' family members, it denied relief, finding the comments did not provide any indication of jury taint, and that the issue was waived anyway for failure to raise it at the time it was reported. **See** Trial Court Opinion, 6/6/25, at 17.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2026